THE OVERSEERS OF NEW BARBADOES *vs.* THE OVERSEERS OF PATERSON.

1. It must appear on the face of an order for the removal of a pauper that all the facts exist which are necessary, under the statute, to authorize such removal, and that the officers making such order have acted clearly within their authority.

Overseers of New Barbadoes v. Overseers of Paterson.

2. The order must further show that the facts necessary to authorize such order were duly proved before the officers making it.

3. If a person coming from Europe, and intending to come into this state, merely lands in New York, and without remaining there, takes a conveyance to the place of destination, it is coming directly from Europe into this state, within the meaning of the statute.

---

*Certiorari* to set aside an order of removal removing Alice Crill from the township of New Barbadoes, in the county of Bergen, to Paterson, in the county of Passaic.

Argued before Justices HAINES and VAN DYKE.

VAN DYKE, J. Two justices of the peace, of the township of New Barbadoes, in the county of Bergen, made their order removing Alice Crill to the city of Paterson, in the county of Passaic, and an appeal was taken to the Sessions of Bergen, where the order was affirmed. It is now removed into this court by *certiorari*, and application is made to quash the order, for two principal reasons.

1. Because the order itself is substantially defective.

2. Because, by reason of the facts agreed upon by and between the parties, the said Alice Crill had no settlement in Paterson at the time.

I think the order in this case is defective in substance, and consequently void. The question involved here, I think, was fully decided in the case of *The Overseers of Princeton* v. *The Overseers of South Brunswick*, 3 *Zab.* 169, where the subject was discussed at length. That case, it is true, arose under the 17th section of the revised act of 1846, which section has been repealed, and the second section of the supplement of 1852 substituted in its place. The sections differ in some respects, but are substantially alike in the parts which bear on the exception taken to this order. Both sections apply to persons who are, or who are likely to become chargeable to the township from which they are sought to be removed. The court decided, in the case in 3 *Zab.*, that everything necessary to author-

ize the justices to act in such a case should appear upon the face of the order. If such ruling was required in that case and under that section, it is still more so under the present proceeding. As the law then stood, the justices were required to send along with the order a copy of the evidence on which the adjudication was founded, which became a part of the proceeding, and might possibly supply, in that form, omissions or defects in the order itself; but that section has been repealed, and the second section of the supplement under which these proceedings occur, and which is substituted for the repealed section, makes no such provision. No evidence is now to be transmitted with the order, nor is there any means by which to ascertain what the overseer of the poor or the justices have done in these cases, except by the order itself; consequently it is essentially necessary that the order itself should contain every matter necessary to show that the officers have acted clearly within their authority, and have done, and only done, what the law expressly authorizes and requires them to do.

The fatal objection to this order is, that it does not appear, in any way, that the law recognizes that Alice Crill was chargeable, or likely to become chargeable, to the township of New Barbadoes, or that the interference of the township officers was at all necessary, or anything else but an improper intermeddling. They have no right to remove persons from the township where they live to another place, except for the reasons mentioned in the statute. That these reasons existed, and were duly adjudicated upon, must appear upon the face of the order. They do not so appear, and the order is materially defective for this reason. The order states, by way of recital, that "whereas, the overseer of the poor, *having reason to believe* that Alice Crill, a poor person within the township, who had not obtained a legal settlement therein, was chargeable thereto, had so informed the justices;" but it does not appear, by the order, that the material fact that

Alice Crill *was* chargeable, or likely to become so, to that township, or that she needed public relief or the aid of the township officers, was in any way proved, either by the overseer of the poor or by Alice Crill, or by any one else, nor did the justices make any adjudication on that part of the case. They were governed, in this part of the case, so far as we learn from the order, wholly by the fact that the overseer had informed them that he had reason to believe in the existence of these material facts. This is not sufficient. No person can be disturbed in his or her abode on such imaginings as these.

The order properly states that Alice Crill was examined by them, upon oath, " relating to her last place of legal settlement," but to nothing else ; "and thereby," that is, by the examination of Alice Crill, which was confined to her last place of legal settlement, "finding the information given us to be true, we did, on such examination, adjudge and determine the legal settlement of the said Alice to be in Paterson." We do therefore command you, &c.

The place of settlement of the supposed pauper seems to have been proved and properly adjudicated upon ; but the other point, equally important, and I think more so, that they had a right to interfere with her on the ground that she was either chargeable, or likely to become chargeable, does not appear, by the order, to have been either proved or adjudicated on. It is therefore fatally defective, and must be quashed.

It was also insisted, on the argument, that the order should be quashed, for the reason that Alice Crill, the supposed pauper, had no legal settlement in Paterson, the place to which she was removed. We do not consider this proposition sustained, and while a decision on the point is not necessary to a determination of this case, yet, as the question is somewhat important, we will express an opinion upon it.

The following facts were agreed upon by the counsel,

on the argument, as belonging to the case: "About twenty years ago, Alice Crill left England for the United States. At the time of her leaving, it was her intention to go to Paterson, where her mother then resided, and who was apprised of her coming. By previous arrangement, her mother met her at the vessel, on its arriving at New York, and took her directly with her to Paterson, where she continued to reside for the space of one year and upwards."

And the question is, whether this is such a directly coming from Europe into this state, and being settled and residing here for the space of one year, as to give the person thus coming a legal settlement in the city, borough, township, or precinct in which he or she shall first settle and reside for the space of one year, according to the meaning of the last clause of the first section of the act for the settlement and relief of the poor. We think it is. Such a settlement is clearly contemplated by the statute, and the case of Alice Crill is precisely within the language of that act, unless it be taken out of it by the mere fact that for a moment she touched the soil of New York on her passage, but with no thought or intention of remaining for an instant longer than was necessary to change from one conveyance to another; but, on the contrary, with the fixed intention and formed design, from the commencement of her passage, to go directly to Paterson, in this state, as the end of her journey. We cannot suppose the statute admits of quite so narrow a construction; for if this be so, then if the vessel had not touched at New York at all, but had sailed directly up the Passaic, the settlement would have been defeated by the fact that she had crossed the *waters* of New York. So, too, if the vessel, on her way from England to the Passaic, had been driven into Halifax, although the pauper had not landed, it might be said, that the directly coming from Europe contemplated by the statute was thereby broken off. We are bound to give such construc-

tion to the act as we suppose the legislature intended, and we cannot suppose they intended to enact an impossibility, but to provide for occurrences likely to take place.

We are not aware of any decision in this state which settles what *is* a directly coming into this state from Europe within the meaning of the act. In the case of *Stillwater* v. *Green*, 4 *Halst.* 59, this court held that a person who came from Europe into New York, and remained there for several weeks, residing in different places in that state previous to coming into New Jersey at all, was not within the provisions of the statute—and this holding was clearly right; and in the case before us, if the destination of Alice Crill had been New York, and if she had landed and remained there for a single day, without any purpose or intention of going anywhere else, and had afterwards, on some new suggestion, crossed over into this state, and become a resident, she would have been as much excluded from the operation of the statute as though she had remained in New York for a month, or even a year; but it is because the destination of Alice Crill was not New York, but New Jersey, because she pursued the shortest and most direct route within her power to reach here, and neither turned to the right nor to the left, nor delayed for a single moment at any place, except when she could not avoid it, and then but for an instant, that we hold her case to be a directly coming from Europe into this state, within the meaning of the act; and her residing for the space of a year and more next thereafter in Paterson, gives her a settlement there until by law she acquires another.

HAINES, J., concurred.